1

2

3

4

5

6

7

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

8

**MOISES GOMEZ-GASCA,**

9      Plaintiff**,**

10      vs.

11   **FUTURE AG MANAGEMENT, INC., ET AL.,**

12      Defendants**.**

13

CASE NO. **19-CV-2359-YGR**

**ORDER GRANTING MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT;
GRANTING MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS;  JUDGMENT**

Dkt. Nos. 62, 64

14      The Court previously granted a motion for preliminary approval of the Class Action

15   Settlement between plaintiff Moises Gomez-Gasca, on behalf of the putative settlement class, and

16   defendants Future Ag Management, Inc., Elias Perez Chavez, Camarillo Berry Farms, L.P., Future

17   Harvesters and Packers, Inc., and Blazer Wilkinson, L.P. on April 21, 2020.  (Dkt. No. 59.)  As

18   directed by the Court's preliminary approval order, on July 21, 2020, plaintiff filed his unopposed

19   motion for attorneys' fees, costs, and service awards. (Dkt. No. 62.)  Thereafter, plaintiff filed their

20   unopposed motion for final settlement approval on July 31, 2020.  (Dkt. No. 64.)  The Court held a

21   hearing and took arguments from the parties on October 20, 2020.

22      Having considered the motion briefing, the terms of the Settlement Agreement, the

23   objections and response thereto, the arguments of counsel, and the other matters on file in this

24   action, the Court **GRANTS** the motion for final approval.  The Court finds the settlement fair,

25   adequate, and reasonable.  The provisional appointments of the class representative and class

26   counsel are confirmed.

27      The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED**.  The Court

28   **ORDERS** that class counsel shall be paid $106,000.00 in attorneys' fees and up to $9,000.00 in

1    litigation costs, and class representative and named plaintiff Moises Gomez-Gasca shall be paid a

2    $10,000.00 incentive award.

3    **I.   BACKGROUND**

4          **A.     Procedural History**

5          Plaintiff filed the putative class action complaint on May 1, 2019 against defendants alleging

6    violation of federal and state laws regarding wages and reimbursement of employment-related

7    expenses with respect to agricultural workers brought to work picking berries under the H-2A

8    agricultural guest workers program.  Plaintiff's amended complaint alleges claims under the Fair

9    Labor Standards Act (FLSA), 29 U.S.C. § 206(a), and California Labor Code §§ 201, 1182.11-

10   1182.13, and 1197, and Wage Order 14, as well as violation of the California Unfair Competition

11   Law, Business and Professions Code § 17200 *et seq.* (UCL).  (Dkt. No. 39.)

12         The parties reached a settlement prior to class certification with the assistance of an

13   experienced mediator the Hon. Bonnie Sabraw (Ret.), at a mediation held November 19, 2019, and

14   signed a memorandum of understanding regarding the terms of the class settlement.  Thereafter, the

15   parties worked cooperatively to draft and sign the long form settlement. (Dkt. No. 56-1, Morton

16   Decl., at ¶5.)  The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:

17         all individuals employed by Future Ag Management Inc. pursuant to Job Order
           Number CA-15279712, under the terms of an H-2A visa, for the period of
18         employment from May 15, 2017 through November 15, 2017 (the "Class
           Period").
19

20   ("the Settlement Class").  In its preliminary approval order, the Court conditionally certified the

21   Settlement Class and provisionally appointed Dawson Morton and Santos Gomez of Law Offices of

22   Santos Gomez as Class Counsel and plaintiff Moises Gomez-Gasca class representative, and Atticus

23   Administration, LLC as the class administrator.  (Dkt. No. 59 at 4.)

24         **B.     Terms of the Settlement Agreement**

25         Under the terms of the Settlement Agreement, defendant will pay $355,000.00 into a

26   common settlement fund—a $175,000 payment by the Camarillo defendants and a $180,000

27   payment by the Future Ag defendants—without admitting liability.  This amount includes attorneys'

28   fees and costs, the cost of class notice and settlement administration, the class representative's

United States District Court
Northern District of California

service award.  It does not include payments for defendants' share of payroll taxes, to be paid entirely by Future Ag Defendants, on the portion of settlement benefits allocated to wages, per the terms of the Settlement Agreement at paragraph 2.7.

### 1.    Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to $106,000.00 in attorneys' fees and no more than $15,000.00 in litigation costs.  The common settlement fund also includes a provision for up to $10,000.00 to be paid to plaintiff Moises Gomez-Gasca as an incentive award in exchange for a general release of all claims against defendant.

### 2.    Class Relief

After deductions from the common fund for fees, costs, and service incentive awards, approximately $213,500.00 will remain to be distributed among the participating class members. Class members will be paid according to pro rata share of the net settlement amount based on the number of workweeks in which the class member performed work during the Class Period in Job Order Number CA-15279712, as a proportion of all such workweeks of the Settlement Class Members during Class Period.

Dividing this amount across the 88 participating class members yields an average recovery of approximately $2,426.14 per class member.  (Declaration of Christopher Longley, Class Administrator, Dkt. No. 64-3, ¶ 12.)  The Agreement provides that no amount will revert to defendants.

### 3.    Cy Pres/Remainder

The Settlement Agreement provides that the Settlement Administrator will use a reliable and secure method for ensuring that the payments are delivered to the Settlement Class Member.  The Parties agree that the Settlement Administrator may wire funds to the Settlement Class Members' specified bank account, Western Union, Sigue Money Transfer, payments into the Mexican Telegrafos system, or other methods requested by the Settlement Class Member that are equally reliable and secure. Settlement Class Members who reside in the United States at the time the Settlement Administrator issues the payments may request to have the payments issued to them by check mailed to their address in the United States. Settlement Class Members will have three

United States District Court
Northern District of California

hundred sixty (360) days from the date that the Defendants fully fund the settlement to receive their settlement payments. (Settlement Agreement ¶ 3.14.)  In the event that there are funds remaining from the Fund that are not claimed by Settlement Class Members, such funds shall be paid to the *cy pres* recipient, Food Bank of Monterey County, within thirty (30) days of the last day for the Settlement Administrator to issue payments to the Settlement Class Members. (*Id.* ¶ 3.15.)  In exchange for the settlement awards, class members will release claims against defendants as set forth in the Settlement Agreement at section 8.

### C.    Class Notice and Claims Administration

Class members were given until September 22, 2020, to object to or exclude themselves from the Settlement Agreement.  Out of 88 total class members no class member filed an objection to or a request to opt out of the Settlement Class, timely or otherwise.  (Supp. Longley Decl., Dkt, No. 70-1, ¶ 4.)

## II.    FINAL APPROVAL OF SETTLEMENT

### A.    Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Settlements that occur before formal class certification also "require a higher standard of fairness."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such

4

settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).]

**B.    Analysis**

*1.    The Settlement Class Meets the Prerequisites for Certification*

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class.  (*See* Dkt. No. 59.)

*2.    Adequacy of Notice*

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves.  (Dkt. No. 59 at ¶ 5.)  Following the Court's preliminary approval and conditional certification of the settlement, the Class Administrator, on May 22, 2020, the Notice was mailed to all 88 Class Members.  (Longley Decl. ¶¶ 4-5.)  As of July 30, 2020, no notices have been returned as undeliverable. (*Id*.)  In addition, on May 27, 2020, Atticus sent a message in Spanish via

United States District Court
Northern District of California

1   WhatsApp to 17 Class Members for whom WhatsApp numbers were received from counsel. (*Id.* at ¶

2   6.)  Six of the messages were successfully delivered. (*Id.*)  Atticus had an additional 44 interactions

3   with class members, including phone calls, and 18 WhatsApp communications. (Longley Decl. ¶ 8.)

4   Also on May 22, 2020, Atticus launched the settlement website www.litigiofuturo.com. (*Id.* at ¶ 7.)

5   The website has remained continuously operational since that date and continues to be accessible as

6   of the date of this filing. (*Id.*)  The URL was printed in the mailed Notice and referenced in the

7   WhatsApp message.  (*Id.*)  Additionally, class counsel has fielded telephone calls, emails, and

8   messages from at least 19 class members. (Third Morton Decl., Dkt. No. 64-1, at ¶ 4.)

9       Based upon the foregoing, the Court finds that the Settlement Class has been provided

10   adequate notice.

### 3.  The Settlement Is Fair And Reasonable

12      As the Court previously found in its order granting preliminary approval, the *Hanlon*

13   indicate the settlement here is fair and reasonable and treats class members equitably relative to

14   one another.  (Dkt. No. 59 at 3.)

15      The reaction of the class was overwhelmingly positive.  The Settlement Administrator

16   received no objections or opt-outs as of the September 22, 2020 deadline.  "[T]he absence of a

17   large number of objections to a proposed class action settlement raises a strong presumption that

18   the terms of a proposed class settlement action are favorable to the class members."  *In re*

19   *Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also*

20   *Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections

21   (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

22      In its preliminary approval order, the Court approved the proposed plan pro rata allocation

23   based on the number of workweeks the class member performed work during the Class Period in

24   Job Order Number CA-15279712, as a proportion of all such workweeks of the Settlement Class

25   Members during Class Period.  (Dkt. No. 59 at 3.)  Plaintiff now proposes to modify the

26   distribution slightly to increase the awards to four class members who worked six weeks or less,

27   whose distribution amounts on a workweek basis are between $387.11 and $774.02.  (Longley

28   Decl. at ¶ 11(c).)  Plaintiff proposes to raise those amounts to ensure they receive at least a

United States District Court
Northern District of California

United States District Court
Northern District of California

minimum award of $868.29 which would provide full FLSA unpaid wages for their travel expenses and liquidated damages.  The cost to raise the payments to the four class members so each received $868.24 is a total of $1,253.50.  Plaintiff proposes that a portion of the savings from a lower costs request be used to raise the payment to these four class members while the remaining savings be apportioned to raise all class members payments on a pro rata basis based on the number of work weeks each worked.

The Court finds this revised plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves the revised plan of allocation.

### 4.      *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.  The *cy pres* recipient, Food Bank of Monterey County, is **APPROVED**.

## III.    MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorney fee award of $106,000.00.  Based on the detailed time records submitted by counsel, the attorneys' fees sought amount to 30% of the settlement fund, or a negative lodestar multiplier of .75 of counsel's lodestar of $140,806.25.  Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth

1    Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical

2    or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–

3    45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

4          Under the lodestar approach, a court multiplies the number of hours reasonably expended

5    by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

6    calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

7    by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

8    the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

9    "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

10   adequate explanation in the record of any 'special circumstances' justifying a departure." *In re*

11   *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

12   1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery

13   would be "either too small or too large in light of the hours devoted to the case or other relevant

14   factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery

15   method, courts consider a number of factors, including whether class counsel " 'achieved

16   exceptional results for the class,' whether the case was risky for class counsel, whether counsel's

17   performance 'generated benefits beyond the cash settlement fund,' the market rate for the

18   particular field of law (in some circumstances), the burdens class counsel experienced while

19   litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled

20   on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.

21   2015) (quoting *Vizcaino*, 290 F.3d at 1047-50.  "[T]he most critical factor [in determining

22   appropriate attorney's fee awards] is the degree of success obtained."  *Hensley v. Eckerhart*, 461

23   U.S. 424, 436 (1983).

24         Using the percentage of the fund method, with the lodestar as a cross-check, the Court

25   finds the attorneys' fees sought to be reasonable.  Plaintiff seeks a fee award equal to 30% of the

26   Gross Settlement Amount.  While a 25 percent award is the "benchmark" for attorneys' fees,

27   district courts may adjust this figure.  *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904

28   F.2d 1301, 1311 (9th Cir. 1990).  Under the circumstances here, based on the strength of the

United States District Court
Northern District of California

8

United States District Court
Northern District of California

recovery and the lodestar cross-check on the amount, the Court finds that an award at 30% of the gross settlement amount appropriate.

The lodestar fees are $91,531.25 for attorney Dawson Morton and $49,275 for attorney Santos Gomez. (Third Morton Decl., Dkt. No. 62-2, at ¶ 7; Gomez Decl., Dkt. No. 62-5, at ¶ 5.) Plaintiff's attorneys expended under 200 hours. (Gomez Decl. at ¶ 5 [65.7 hours]; Morton Decl. at ¶ 7 [126.25 hours].)  Class Counsel seeks $750 per hour for Santos Gomez a 1993 graduate and $725 per hour for Dawson Morton a 1999 graduate. (Gomez Decl. at ¶ 2; Third Morton Decl. at ¶ 6.)  Both attorneys are bilingual and have over twenty years of experience representing migrant and seasonal farm laborers. (Gomez Decl. at ¶ 3; Third Morton Decl. at ¶¶ 3-5.)  These rates are appropriate in the San Francisco Bay Area legal community and are well supported by case law from the Northern District.  The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market.  The Court also finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $106,000.00 to be fair, reasonable, and adequate.

**B.      Costs Award**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement of litigation expenses, and provides records documenting that claim, for the amount of $8,622.41. The Court finds the requested amount to be reasonable, fair, and adequate.

**C.      Incentive Award**

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to

which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of 87 others.  Plaintiff was a temporary agricultural worker and undertook significant risk in bringing this litigation.  Plaintiff exposed himself to significant threat of retaliation and experienced a personal visit asking him to drop the case and stop causing problems. (Gomez-Gasca Decl. at ¶ 9.)  Plaintiff submits a declaration attesting that he devoted in excess of fifty hours in support of the litigation. (Gomez-Gasca Decl. at ¶ 11.)

Plaintiff seeks an incentive award of $10,000.  This amount is justified based on the size of the Gross Settlement Amount, the average amount of settlement benefits per class member, the risk and burden of litigation, and the amount of time devoted by Plaintiff to this case, including communicating with class members about the suit and the settlement and participating in an all-day mediation which led to the settlement. (Morton Decl. at ¶10; Gomez-Gasca Decl., Dkt. No. 62-7, at ¶¶ 4-8.)  The average settlement payment, as calculated by the Administrator, in this case is $2,426.  Especially in light of the results achieved, the risks plaintiff assumed, and the results he obtained for all class members, the service award payment plaintiff requests is reasonable.  Thus, the Court approves the requested service award payment for plaintiff Moises Gomez-Gasca.

## IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**.  The motion for attorneys' fees, costs, and service awards is **GRANTED**.

United States District Court
Northern District of California

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on April 21, 2020, and this order.  This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

Plaintiff shall file a status report regarding the distribution to class members and any proposal regarding the need for a second distribution no later than **May 7, 2021**.  The Court **SETS** a compliance deadline on **May 14, 2021**, on the Court's 9:01 a.m. calendar to verify timely filing of that status report.

Plaintiff shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **January 21, 2022**.  The Court **SETS** a compliance deadline on **January 28, 2022,** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket Nos. 62 and 64.

Dated: October 20, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

EXHIBIT A

Dawson Morton, Esq. SBN: 320811
Santos Gomez, Esq. SBN 72741
LAW OFFICES OF SANTOS GOMEZ
1003 Freedom Boulevard
Watsonville, CA 95076
Telephone:  (831) 228-1560
Facsimile:  (831) 228-1542
Email:  dawson@lawofficesofsantosgomez.com
          santos@lawofficesofsantosgomez.com

Attorneys for Plaintiff Moises Gomez-Gasca


Michael C. Saqui, Esq., SBN: 147853
Jennifer M. Schermerhorn, Esq., SBN: 225070
Rebecca A. Hause-Schultz, Esq., SBN: 292252
**DOWLING AARON INCORPORATED**
1410 Rocky Ridge Drive, Suite 330
Roseville, California 95661
Telephone:   (916) 782-8555
Facsimile:    (916) 782-8565
Email:  jschermerhorn@laborcounselors.com
          rhause-schultz@laborcounselors.com

Attorneys for Defendants: Camarillo Berry Farms, LP and Blazer Wilkinson LP

Terrence O'Connor, Esq., SBN: 88004
Anna C. Toledo, Esq., SBN:  246636
NOLAND HAMERLY ETIENNE HOSS
333 Salinas Street
P. O. Box 2510
Salinas, California 93902-2510
Telephone:  (831) 424-1414
Facsimile:  (831) 424-1975
Email: toconnor@nheh.com
          atoledo@nheh.com

Attorneys for Defendants: Future Ag Management, Inc., Elias Perez Chavez, and Future Harvesters and Packers, Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MOISES GOMEZ-GASCA, and others similarly situated , | Case No.: 19-CV-02359-YGR |
| Plaintiffs, | **CLASS ACTION SETTLEMENT AND RELEASE OF CLAIMS** |
| vs. | Judge: Honorable Yvonne Gonzalez Rogers |
| FUTURE AG MANAGEMENT INC., ELIAS PEREZ CHAVEZ, and CAMARILLO BERRY FARMS, LLC., | Conference Hearing: February 24, 2020 Jury Trial: December 7, 2020 |
| Defendants. | |

This Settlement Agreement and Release of Claims ("Agreement") is entered into by and  between Moises Gomez-Gasca individually and with respect to claims brought by him on  behalf of others similarly situated ("Plaintiff"), and Future Ag Management, Inc., Elias Perez Chavez, Future Harvesters and Packers, Inc. (collectively the "Future Ag Defendants"), and Camarillo Berry Farms LP and Blazer Wilkinson LP (collectively the "Camarillo Defendants").   As used here, "Defendants" refers to all defendants collectively,  and "Parties" refers to Plaintiff and Defendants, collectively.

1.   **RECITALS**

This Agreement is entered into based upon the following facts and circumstances:

1.1   On May 1, 2019, Moises Gomez-Gasca ("Named Plaintiff") filed a lawsuit, assigned case number 4:19-cv-2359-YGR, on behalf of himself and on behalf of  similarly situated employees for alleged violations of (1) Fair Labor Standards Act (FLSA) minimum wage, (2) California minimum wage, (3) California

overtime premiums, (4) breach of contract, (5) indemnification for work related expenses, (6) waiting time penalties, and (7) unlawful and unfair business practices. In the Complaint, Plaintiff named Future Ag Management, Inc. as the farm labor contractor that directly employed Plaintiff and the similarly situated employees, Elias Perez-Chavez as the operator of and individual personally financially involved in Future Ag Management, and Camarillo Berry Farms LP as the joint employers and/or client employers pursuant to Cal. Lab. Code § 2810.3.

1.2     Plaintiff was subsequently granted leave to amend and filed his First Amended Complaint on October 10, 2019. In his First Amended Complaint, Plaintiff named two additional defendants Future Harvesters and Packers Inc. as the alleged partner company of Future Ag Management Inc., and Blazer Wilkinson as an alleged partner company of Camarillo Berry Farms LP.

1.3     The Parties have engaged in written discovery and the production of documents including payroll records, time cards and invoices. Plaintiff and Defendants have analyzed those records  and performed additional informal investigation of the claims and assessed the strengths and  weaknesses of factual and legal bases for the claims and defenses thereto.

1.4     On November 19, 2019, the Parties engaged in arms-length negotiations during a mediation before Honorable Bonnie Sabraw. During mediation the Parties exchanged information to assist in determining a realistic settlement range. With the mediator's assistance, the Parties reached agreement on all claims raised in the operative Complaint.

1.5     The Parties have agreed to resolve this matter on the terms set forth herein, subject to preliminary and final approval of the Agreement by the Court. In the event that the Agreement is not approved by the Court, the Agreement shall be of no force or  effect.  In such event, nothing in the Agreement shall be used by or construed against any Party,  and the Parties reserve their respective rights as to all claims and defenses thereto.

1.6    The Parties agree that the filing of the Agreement is for settlement purposes only and if, for any reason, the settlement is not approved, the Agreement will be of no force or effect.  In such event, nothing in the Agreement shall be used or construed by or against any Party as a determination, admission, or concession of any issue of law or fact in the Action; and the Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Action as if the Agreement never existed.

2.    **DEFINITIONS**

As used in the Agreement, the terms below are defined as follows:

2.1    "Action" means the civil action pending in the United States District Court, Northern District of California, San Jose Division, titled *Moises Gomez-Gasca v. Future Ag Management, Inc. et al*, case number 4:19-cv-02359-YGR.

2.2    "Class Counsel" or "Plaintiff's Counsel" means the attorneys of record for Plaintiff and aggrieved  employees as listed below:

> Dawson Morton (Cal. SBN 320811)
>
> Santos Gomez (Cal. SBN 172741)
>
> Law Offices of Santos Gomez
>
> 1003 Freedom Boulevard
>
> Watsonville, CA 95076
>
> Phone: (831) 228-1560
>
> dawson@lawofficesofsantosgomez.com
>
> santos@lawofficesofsantosgomez.com

2.3    "Class Representative" or "Plaintiff" mean Moises Gomez-Gasca.

2.4    "Court" means the District Court for the Northern District of California, San Jose Division, in which this Action was commenced and is pending.

2.5    "Defendants" means the Future Ag Defendants (Future Ag Management, Inc., Elias Perez Chavez and Future Harvesters and Packers, Inc.) and Camarillo Defendants (Camarillo Berry Farms LP and Blazer Wilkinson).

2.6   "Effective Date" means the date by which <u>all</u> of the following have occurred: (1) Granting of final approval of the Agreement by the Court with Entry of Judgment by the Court if there are no objections; (2) If there are objections, expiration of the time for the filing or noticing of any appeal from the Judgment; and (3) If a writ or appeal from that Judgment is filed and then ultimately denied or dismissed, the date the Ninth Circuit Court of Appeals or the United States Supreme Court has rendered a final judgement on the writ or appeal affirming the Court's final approval of the Settlement without material modification.

2.7   "Gross Settlement Amount" means the amount of three hundred fifty five thousand dollars ($355,000.00) to be paid by Defendants pursuant to this Agreement, as allocated in section 3.2 and 3.3 below.  The following payments will be made from the Gross Settlement Amount: (1) the cost of settlement administration; (2) the amount of attorney's fees and litigation costs awarded to Class Counsel; (3) the amount of Service Payment awarded to Plaintiff; and (4) settlement benefits to Settlement Class Members who do not exclude themselves from the Agreement.  The Gross Settlement Amount does not include payments for Defendants' share of payroll taxes, to be paid entirely by Future Ag Defendants, on the portion of settlement benefits allocated to wages.

2.8   "Net Settlement Amount" is defined in Section 3.11 below.

2.9   "Notice Packet" means the "Notice of Proposed Class Action Settlement and Hearing" and the "Estimated Individual Settlement Allocation Form" further described in Section 5.2 below that will be sent out by the Settlement Administrator to the Settlement Class Members.

2.10   "Parties" means the Plaintiff and Defendants.

2.11   "Release Period" means the period from May 15, 2017 through November 15, 2017.

2.12   "Settlement" or "Agreement" means this Joint Class Action Settlement and Release of Claims.

2.13  "Settlement Administrator" means Atticus Administration, LLC. The Settlement Administrator will be responsible for the administration of the settlement fund, as defined in Section 3, and all related matters, and whose duties shall include, but may not be limited to: giving notice of the settlement to the Settlement Class Members; calculating and paying the amounts due to Settlement Class Members, Plaintiff, and Class Counsel under the Agreement; providing settlement payments inclusive of IRS forms W-2s and 1099s if required by law; certification of completion of notice and payment processes to the Court; and establishing and administering a Qualified Settlement Fund ("QSF") account to hold and distribute the Fund, as described in Section 3 below. Interest accruing to that account between the time of payment(s) required by Section 3 below and the time funds are distributed shall be added to the Net Settlement Fund.

2.14  "Settlement Class," "Settlement Class Members" or "Class Members" means all individuals employed by Future Ag Management Inc. pursuant to Job Order Number CA-15279712, under the terms of an H-2A visa, for the period of employment from May 15, 2017 through November 15, 2017.  The total number of Settlement Class Members is estimated to be eighty-eight (88) employees. However, the Parties understand and agree that there may be fluctuation in the final number due to varying circumstances. Should the final number of Settlement Class Members exceed one hundred (100) employees, the Parties shall meet and confer regarding the scope and inclusion of the additional Settlement Class Members and the need to increase the overall settlement fun.

3.  **TERMS OF SETTLEMENT**

3.1  **Settlement Fund.**  The claims of Plaintiff and Settlement Class Members are settled and in consideration, Defendants shall pay a total gross settlement amount of three hundred and fifty-five thousand dollars ($355,000.00) (hereinafter "the Fund.").

3.2    **Payment by the Camarillo Defendants.** The Camarillo Defendants shall pay a gross settlement amount of one hundred and seventy-five thousand dollars ($175,000.00), inclusive of payments to Named Plaintiff, the Class fees, litigation costs, third party administration, and expenses (hereinafter "Camarillo Fund"). The Camarillo Defendants shall pay the Camarillo Fund within twenty (20) days of Final Approval.

3.3    **Payment by the Future Ag Defendants.** The Future Ag Defendants shall pay a gross settlement amount of one hundred and eighty thousand dollars ($180,000.00), inclusive of payments to Named Plaintiff, the Class fees, litigation costs, third party administration, and expenses (hereinafter "Future Ag Fund"). The Future Ag Defendants shall pay ninety thousand dollars ($90,000.00) of the Future Ag Fund due within twenty (20) days of Final Approval and the remaining ninety thousand dollars ($90,000.00) of the Future Ag Fund due on or before December 1, 2020.

3.4    Defendants or any of their successors may elect to pay any part or all of the payments before they are due.

3.5    **Settlement Fund Account.** The Settlement Administrator shall establish and administer  an account to hold and distribute the Settlement Fund. Interest accruing to that account between  the time of payment and the time the funds are distributed shall be added to the Net Settlement  Fund.

3.6    **Non-Reversionary Fund.** The Agreement is completely non-reversionary and the  entire Fund, after deductions for attorneys' fees and litigation costs, administrative expenses, the service payment to the Plaintiff, and payroll tax payments on the payments to the Settlement Class Members (if any), shall be distributed pro rata to the Settlement Class Members, including Plaintiff, who do not exclude themselves from the settlement. In the event that there are funds remaining from the Fund, such funds shall be paid to the Food Bank of Monterey County as the designated *cy pres* beneficiary.

3.7 **Payment of Attorneys' Fees and Costs.** Plaintiff's Counsel will request, and Defendants and their counsel will not oppose, an award of up to one hundred six thousand five hundred dollars ($106,500 or 30%) of the Fund as an all-inclusive award of attorneys' fees, and an award for a reasonable amount of out-of-pocket costs and expenses, such costs and expenses not to exceed fifteen thousand dollars ($15,000).

3.8 Plaintiff's Counsel will be issued a Form 1099 by the Settlement Administrator for their award of attorneys' fees, costs, and expenses.  In the event the Court does not award the above amounts in full, the difference will be included in the Net Settlement Amount to be distributed to the Settlement Class Members. Plaintiff's Counsel shall be paid for their actual costs and expenses, and attorney's fees approved by the court, at the same time that the Settlement Administrator issues payments to the Settlement Class Members.

3.9 **Payments to Settlement Administrator.** The Settlement Administrator shall pay from the Fund fifty percent (50%) of the payment due to itself for its actual costs and expenses (estimated at no more than $10,000) no earlier than 7 days after it receives the Camarillo Fund payment and the initial Future Ag Fund payment and the remaining fifty percent (50%) of the payment at the same time that the Settlement Administrator issues payments to the Settlement Class Members.

3.10 **Service Payment to Plaintiff Moises Gomez-Gasca.**  Defendants shall not oppose Plaintiff's request to the Court for an award of up to ten thousand dollars ($10,000) for his service as the Class Representative (the "Service Payment") in addition to any payment he may otherwise receive as a Settlement Class Member.  The Settlement Administrator will issue the Service Payment to the Plaintiff no earlier than 7 days after it receives the Camarillo Fund payment and the initial Future Ag Fund payment.  The Settlement Administrator will issue Plaintiff a form 1099 for his Service Payment.

3.11   **Net Settlement Amount.** "Net Settlement Amount" shall be the Fund minus the following:  (1) the award of attorneys' fees and costs to Class Counsel approved by the Court, as set forth in Section 3.7; (2) the Service Payment to the Class Representative as set forth in Section 3.10;  (3) the payment to the Settlement Administrator (estimated at no more than $10,000) as set forth in Section 3.9; and (4) payroll tax payments on the payments to the Settlement Class Members (if any are required by state or federal law).

3.12   **Individual Settlement Allocation.** Each Settlement Class member who does not exclude himself or herself from the Agreement shall receive his or her pro-rata share of Net Settlement Amount. To determine each Settlement Class Member's Individual Settlement Allocation, the percentage of the Net Settlement Amount attributed to the Settlement Class shall be allocated among and paid to the Settlement Class Members based on the number of workweeks they performed work during the Class Period in Job Order Number CA-15279712, as a proportion of all such workweeks of the Settlement Class Members during Class Period. No Settlement Class Member shall receive a Payment of less than fifty dollars ($50).

3.13   The Named Plaintiff and each of the Participating Settlement Class Members' Individual Settlement Allocations shall be treated as non-taxable payments of reimbursements, interest and penalties or allocated between taxable and non-taxable items, as follows: fifty percent (50%) are wages earned as an H2A worker and are therefore excluded from payroll tax withholding, including the employee's portion of FICA, FUTA, SDI, and any other mandated taxes withholding, for which each Participating Settlement Class Member shall be issued a Form W-2 by the Settlement Administrator; twenty five percent (25%) are interest, and penalties, not subject to FICA, FUTA, SDI, and any other mandated tax withholding, for which each Participating Settlement Class Member shall be issued a Form 1099 INT by the Settlement Administrator if such issuance is required by law; and twenty five percent (25%) are reimbursements for travel and other H2A

related expenses the Settlement Class Members incurred and for which they were not previously reimbursed. The distribution of funds to Settlement Class Members who do not exclude themselves form the settlement shall be paid as soon as practicable after the Camarillo Defendants and the Future Ag Fund Defendants fully fund the settlement.

      3.14   **Method of Payment to Settlement Class Members.** The Parties agree that the Settlement Class Members are foreign nationals who may not be physically present in the United States at the time of payments to the Settlement Class Members.  The parties acknowledge that payment by issuance and mailing of a check is not an adequate method for international payments. Accordingly, the Parties agree that the Settlement Administrator will use a reliable and secure method for ensuring that the payments are delivered to the Settlement Class Member. The Parties agree that the Settlement Administrator may wire funds to the Settlement Class Members' specified bank account, Western Union, Sigue Money Transfer, payments into the Mexican Telegrafos system, or other methods requested by the Settlement Class Member that are equally reliable and secure.  Settlement Class Members who reside in the United States at the time the Settlement Administrator issues the payments may request to have the payments issued to them by check mailed to their address in the United States.  Settlement Class Members will have three hundred sixty (360) days from the date that the Defendants fully fund the settlement to receive their settlement payments.

      3.15   **Allocation of Unclaimed Funds.** In the event that there are funds remaining from the Fund that are not claimed by Settlement Class Members, such funds shall be paid to the Food Bank of Monterey County as the designated *cy pres* beneficiary within thirty (30) days of the last day for the Settlement Administrator to issue payments to the Settlement Class Members.

4.   **<u>DUTIES OF SETTLEMENT ADMINISTRATOR</u>**

4.1     The Settlement Administrator shall establish and maintain a Settlement Fund Account as specified in Section 3.5 above and shall disburse funds from that Account as specified in this Section.

4.2     The Settlement Administrator shall mail the Notice Packet to Settlement Class Members as specified in Section 5 below and shall make appropriate and cost-efficient efforts to assure delivery of such Notice Packet to all Settlement Class Members.

4.3     The Settlement Administrator shall receive and process requests of Settlement Class Members to opt out of this Settlement or to object to it as specified in Section 6 below.

4.4     The Settlement Administrator shall be responsible for issuing the payments and calculating and withholding the employee's and employer's portions of all legally required state and federal taxes.  The Settlement Administrator shall be responsible for paying the full amount of the employee's portion of all withheld taxes to the appropriate taxing authorities for H-2A employees.   The parties acknowledge that present law does not require withholding of taxes for wages and earnings related to an H-2A worker's work. At least fifteen (15) calendar days before issuing the payments to Participating Settlement Class Members, the Settlement Administrator shall deliver to Defendants (with a copy to Plaintiff's counsel) a written calculation of each Defendant's portion of all required employment taxes, if any.  If Defendants concur with the written calculation, Defendants shall pay this amount into the Settlement Fund administered by the Settlement Administrator no later than the date that the Settlement Administrator issues payments to Participating Settlement Class Members.  If Defendants disagree with the written calculation, Defendants shall notify the Settlement Administrator promptly of the nature and amount of the disagreement and pay the undisputed portion to the Settlement Administrator no later than the date that the Settlement Administrator issues payments to Participating Settlement Class Members.    If the Settlement

Administrator and the Defendants are unable to resolve their disagreement within five (5) business days, the Settlement Administrator and Defendants shall immediately report the remaining disagreement to the Court, which shall determine the correct resolution of the matter.   The Settlement Administrator shall be responsible for paying the employer's portion of all required employment taxes to the appropriate taxing authorities, but solely with monies paid directly from Defendants and not from the Fund.

4.5    In calculating payments due under this Agreement, the Settlement Administrator shall use the Defendants' payroll records showing each Settlement Class Members' dates of employment and number of workweeks during which any work was performed during the Class Period of May 15, 2017 to November 15, 2017, subject to the challenge procedure described in this Section.   The Settlement Administrator shall inform Settlement Class Members of the dates of their employment and the number of weeks worked in the Class Period.   If a Settlement Class Member disagrees with the listed employment dates and/or the number of weeks worked during the Class Period based on Defendants' payroll records or other information provided by Defendants, he/she must submit a written challenge to the amount of weeks worked or dates of employment to the Settlement Administrator no later than forty five (45) calendar days after the Notice Packet mailing set forth in Section 6.1 ("Objection/Exclusion Deadline").   The Settlement Administrator shall, within five (5) calendar days after receipt of any such timely written challenge, but no later than five (5) calendar days after the Objection/Exclusion Deadline Date, determine whether the Settlement Class Member has shown that Future Ag Defendant's information provided to the Settlement Administrator was incorrect. Similarly, if a person who is not identified by Future Ag Defendant's payroll records as Settlement Class Member asserts that s/he is a Settlement Class Member, s/he must submit a written challenge regarding Settlement Class membership to the Settlement Administrator no later than the Objection/Exclusion Deadline.   The

Settlement Administrator shall, within five (5) calendar days after receipt of any timely written challenge regarding Settlement Class membership, but no later than five (5) calendar days after the Objection/Exclusion Deadline, determine whether the person has shown evidence that Future Ag Defendant's information provided to the Settlement Administrator was incorrect. The Settlement Administrator may consult with counsel for the Parties in reaching these determinations. The Settlement Administrator will give written notice to the individual who submitted the challenge and counsel for the Parties of its determination. The individual who submitted the challenge shall have five (5) calendar days, or until the Objection/Exclusion Deadline, whichever is later, to submit an objection to the Settlement and/or to "opt out" of the Settlement. Either party may challenge any such determination by the Settlement Administrator to the Court if the Settlement Administrator exceeds its authority under the Agreement.

4.6 **Final Report by Settlement Administrator to Court.** Within ten (10) business days after final disbursement of all funds from the Fund, including the *cy pres* payment, the Settlement Administrator will serve on the Parties a declaration constituting a final report on the disbursements of all monies from the Fund.

5. **NOTICE TO SETTLEMENT CLASS MEMBERS**

5.1 **Settlement Class Member Contact.** Within fifteen (15) days following the Court's entry of an Order Granting Preliminary Approval of the Agreement, the Future Ag Defendants shall provide the Settlement Administrator and Plaintiff's counsel a database or spreadsheet listing the name, last known permanent address in Mexico, social security number, email addresses, WhatsApp account numbers, telephone number(s), and number of workweeks worked during the Class Period for each Settlement Class Member (the "Class List).

5.2 **Notices of Proposed Class Action Settlement.** Within fifteen (15) days after receiving the Class List from Defendants, the Settlement Administrator shall send the Notice of Proposed Class Action Settlement and Hearing ("Notice"),

attached hereto as **Exhibit A,** to each Settlement Class Member in Spanish (with a web page link to the English and Spanish version).  In addition to the Notice, the Settlement Administrator will send each Settlement Class Member an "Estimated Individual Settlement Allocation Form",  in Spanish (with a web page link to the English and Spanish version), that describes the facts and methods used to calculate the Estimated  Individual Settlement Allocation in the form of **Exhibit B** attached hereto (collectively Exhibits A and B are referred to as the "Notice Packet").  The Settlement Administrator will send the Notice Packet using the information in the Class List.  The Notice Packet will provide the estimated individual settlement payment for each Settlement Class Member, describe the facts and methods used to calculate the Estimated Individual Settlement Payment and the challenge procedure, described in Section 6, by which a Settlement Class Member can dispute the information on which his/her payment amount is calculated.  In addition, the Settlement Administrator will create and host a web page where Settlement Class Members can obtain the Notice Packet or other information regarding the Settlement, and submit requests to the Settlement Administrator to update any of their information, including their preferred method of payment.  The web page address will be included in the Notice Packet.

6.      **OPT-OUT AND OBJECTION PROCEDURES**

        6.1      **Opt-Out/Exclusion Procedure.** Any Settlement Class Member may request exclusion from the Settlement Class by "opting out."  Settlement Class Members who wish to be excluded must submit a written and signed request to the Settlement Administrator for exclusion from the Settlement which must include his or her full name, last four digits of his or her social security number, dates of employment with Defendants during the Class Period, mailing address, email address and/or phone number (if available). To be effective, Settlement Class Members' exclusion requests must be either postmarked (or, if delivered to the Settlement Administrator by means other than United States First Class Mail,

received by the Settlement Administrator) by the Objection/Exclusion Deadline, which shall be forty five (45) days after the date of mailing of the Notice Packet.

6.2 **Withdrawal of Opt-Out/Exclusion Request.** Any Settlement Class Member who submits an exclusion request may withdraw that request by submitting, by the Objection/Exclusion Deadline, a signed request to withdraw his or her exclusion request, and the withdrawal request must include his or her full name, last four digits of his or her social security number, mailing address, email address, and phone number. The Settlement Administrator shall timely notify Plaintiff's Counsel and Defendants' counsel that the exclusion requests were timely submitted and not withdrawn.

6.3 **Notice to Parties.** The Settlement Administrator shall stamp on the original of any exclusion request the date the request was received, and, if received by United States First Class Mail, also record the postmark date of the request.  The Settlement Administrator shall thereafter serve copies of the exclusion request(s), inclusive of the date stamps, on Plaintiff's Counsel and Defendants' counsel not later than five (5) business days after receipt thereof.  The Settlement Administrator shall, within five (5) days following the Objection/Exclusion Deadline, send via e-mail a final list of all exclusion requests that were not withdrawn to Plaintiff's Counsel and Defendants' counsel.  The Settlement Administrator shall retain copies of all exclusion requests that were not withdrawn and originals of all envelopes accompanying exclusion requests that were not withdrawn in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

6.4 The release set forth in Section 8 below will bind all Settlement Class Members who do not file a timely exclusion request, or those who file but timely withdraw such a request.  However, Settlement Class Members who file and do not withdraw an exclusion request will not be bound by this Agreement or the release of claims made in the Action.

6.5    **Objections.** Settlement Class Members who wish to present objections to the proposed Agreement at the Final Approval Hearing must first do so in writing. If a Settlement Class Member wishes to object to the approval of this Agreement by the Court, the objector must submit a written statement of the objection to the Settlement Administrator.  To be considered, such statement must be timely filed with the Settlement Administrator by the Objection/Exclusion Deadline.   The Settlement Administrator shall stamp the date received on the original and send copies to the Parties by e-mail or facsimile and overnight delivery not later than five (5) days after receipt thereof.  The Settlement Administrator shall file the date-stamped originals of any objections with the Court. An objector also has the right to appear at the Final Approval Hearing, either in person or through counsel hired by the objector, at the objector's cost.  An objector who wishes to appear at the Final Approval Hearing must state his or her intention to do so at the time he/she submits his/her written objections.  An objector may withdraw his/her objections at any time.

7.    <u>**CERTIFICATION OF CLASS AND APPOINTMENT OF CLASS COUNSEL**</u>

7.1    The Parties agree that for the purposes of this Agreement, Plaintiff's Counsel shall be appointed as Class Counsel. This Agreement is not evidence that the Action has any merit; nor does it constitute an admission of any wrongdoing by Defendants. Defendants do not admit to individual or class liability. This Agreement will not be deemed admissible in any other proceeding, or in this proceeding, other than to effectuate this Agreement.

7.2    Plaintiff's Counsel shall move the Court to effectuate this Section.

8.    <u>**MUTUAL RELEASE**</u>

8.1    The Parties individually and  collectively, hereby waive, release and discharge each other, their  former and present parent companies, subsidiaries, affiliates, officers, members, directors,  shareholders, employees, managers, consultants, partners, attorneys, joint or co-venturers,  independent contractors, heirs,

agents, assigns, insurers, reinsurers of any of them, client-employers, joint employers, and other related persons and entities and their successors in interest  (collectively, "Released Parties"), from all causes of action, claims, losses, damages, and wages asserted in the Action or which arise out of the factual allegations in the operative complaint including but not limited to: any of the claims, actions or causes of action which  were alleged or stated, or the facts, matters, transactions or occurrences referred to in the  operative complaint, including but not limited to, any claims for off-the-clock work, including  transportation and waiting time, failure to pay minimum wages, failure to pay overtime wages,  failure to pay all wages earned every pay period, untimely payment of wages, failure to pay all wages  owed upon termination or resignation, transportation and/or subsistence expenses incurred for work purposes, unfair competition based on the aforementioned violations, but not as to such claims that may not be waived under applicable state and federal including but not  limited to claims arising from an industrial injury.

8.2     Named Plaintiff expressly waives and relinquish any rights and benefits he has or may have under Cal. Civ. Code § 1542 which reads as follows:

"**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**."

The Section 3.10 Service Payment to the Plaintiff is consideration for Plaintiff agreeing to this waiver, which is significantly broader than the Settlement Class Member waiver.

9.     **APPROVAL HEARINGS**

9.1     **Preliminary Approval Hearing.** At the Preliminary Approval Hearing, Plaintiff and Defendants shall jointly request that the Court issue a Preliminary Approval Order, the proposed form of which shall be submitted before the Preliminary Approval Hearing, provisionally certifying the proposed class for purposes of settlement only and approving the Settlement as being fair, reasonable and adequate to the Settlement Class Members.

9.2     **Preliminary Approval Order.** If the Court preliminarily approves the Agreement, without modification, the Court shall issue a Preliminary Approval Order so stating.

9.3     **Denial in Whole or in Part.** If the Court disapproves of all or any provision of the Agreement, the Parties shall not be bound by the Agreement in any way unless the Plaintiff and Defendants mutually agree to reaffirm the Agreement as modified.   In the event that the Plaintiff and Defendant do not reaffirm the Agreement as modified, the Agreement and the underlying negotiations shall not be admissible for any purpose in any proceeding.   The Plaintiff and Defendants shall be free to renegotiate any other settlement agreement or proceed with the litigation.

9.4     **Final Approval Hearing.** The Court shall conduct a Hearing for Final Approval of the Agreement no later than one hundred forty (140) calendar days after the date of Preliminary Approval, or as soon thereafter as there is availability on the Court's calendar, provided that the hearing date shall be at least ten (10) days after the Objection/Exclusion Deadline.

9.5     At the Final Approval Hearing, Plaintiff shall move the Court for entry of an Order Granting Final Approval of the Agreement, the proposed form of which shall be submitted before the Final Approval Hearing, approving the Agreement as fair, reasonable and adequate, and approving requests for the following: (i) payments to the Settlement Administrator; (ii) attorneys' fees and costs; (iii) service payment to the Plaintiff; and (iv) distribution of the funds per the terms of the Agreement.

9.6     **Final Approval Order.** If the Court approves the Agreement, the Court shall issue a Final Approval Order so stating.

9.7     The Parties shall further request the Final Approval Order Granting Final Approval of the Agreement be entered as a Judgment in the Action as soon as practicable after entry of the Court's granting of the Final Approval Order.  The judgment will constitute a binding and final resolution of any and all claims by any Participating Settlement Class Members, as defined by the Release herein.

10.   **REPRESENTATIONS AND WARRANTIES**

Each of the Parties to the Agreement represents and warrants, and agrees with each other Party hereto, as follows:

10.1   All Parties have received independent legal advice from their attorneys with respect to the advisability of entering into the Agreement and with respect to the advisability of executing this Agreement.

10.2   Each of the Parties, through his/her/its respective counsel, has made such investigation of the facts pertaining to this Settlement and the Agreement and all of the matters pertaining to them as they deem necessary.

10.3   The Parties and their respective attorneys shall proceed diligently to prepare and execute all documents necessary to seek the approval of the Court and to do all things reasonably necessary to consummate the Agreement according to its timing provisions.  Class Counsel shall have responsibility for preparing the motions and documents.

10.4   Throughout the pendency of this settlement process, the Parties will take all steps necessary to stay, postpone and/or take off calendar all court appearances, filing deadlines, discovery deadlines and/or other case activity up and until the submission of this Agreement, or as soon thereafter as possible.

11.   **DISPUTE RESOLUTION**

11.1   The Parties shall cooperate in good faith to complete the terms of this Agreement.  Any disputes that arise during the process of finalizing the Agreement

documents shall be presented to the District Court for the Northern District of California, San Jose Division.

12.   **ADDITIONAL PROVISIONS**

12.1   **Execution in Counterpart.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

12.2   The terms of this Agreement may not be changed or terminated orally. It may only be modified or amended in a writing signed by the Parties and, once the Agreement has been filed with the Court, such change must also be approved by the Court.

12.3   All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing, and shall be by hand delivery, overnight courier, or, unless specified otherwise in a provision of the Agreement, mailed, postage prepaid, by first class or express mail.  All such notices, requests, demands, and other communications are to be sent to the undersigned persons at their respective addresses as set forth herein:

> Counsel for Plaintiff:
> Dawson Morton
> Santos Gomez
> Law Offices of Santos Gomez
> 1003 Freedom Boulevard
> Watsonville, CA 95076
> Email: dawson@lawofficesofsantosgomez.com
>             santos@lawofficesofsantosgomez.com
>
> Counsel for Camarillo Defendants:
> Michael C. Saqui, Esq.
> Jennifer M. Schermerhorn, Esq.
> Rebecca A. Hause-Schultz, Esq.
> DOWLING AARON INCORPORATED
> 1410 Rocky Ridge Drive, Suite 330

Roseville, California 95661
Email: jschermerhorn@laborcounselors.com
           rhause-schultz@laborcounselors.com

Counsel for Future Ag Defendants:

Ana C. Toledo
Terrence O'Connor
NOLAND, HAMERLY, ETIENNE & HOSS
P. O. Box 2510
Salinas, CA 93902
Email: atoledo@nheh.com
           toconnor@nheh.com

The persons and addresses to which such communications shall be made may be changed from time to time by a written notice mailed as stated above.

THE UNDERSIGNED ACKNOWLEDGES THAT EACH HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS CONSEQUENCES.

Dated: 01 - 14 - 2020 , 2019

_Moises Gomez Gasca_
MOISES GOMEZ-GASCA
Plaintiff

Dated: _____, 2019

_____
ELIAS CHAVEZ PEREZ
Defendant

Roseville, California 95661
Email: jschermerhorn@laborcounselors.com
        rhause-schultz@laborcounselors.com

Counsel for Future Ag Defendants:

Ana C. Toledo
Terrence O'Connor
NOLAND, HAMERLY, ETIENNE & HOSS
P. O. Box 2510
Salinas, CA 93902
Email: atoledo@nheh.com
        toconnor@nheh.com

The persons and addresses to which such communications shall be made may be changed from time to time by a written notice mailed as stated above.

THE UNDERSIGNED ACKNOWLEDGES THAT EACH HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS CONSEQUENCES.

Dated: _____, 2019

                                    _____
                                    MOISES GOMEZ-GASCA
                                    Plaintiff

Dated: 1/15/2020
                                    _ELIAS PEREZ CH_
                                    ELIAS CHAVEZ PEREZ
                                    Defendant

1

2  Dated: __1__|__5__|__2020__
                        2019

3                                        Representative for Defendants
                                         Future Ag Management, Inc.
4                                        and Future Harvesters
                                         and Packers, Inc.
5

6  Dated: _____, 2019

7  _____
                                         Kiana Amaral, Secretary
8                                        for Defendant
                                         Camarillo Berry Farms, LP
9

10

11

12

13  Dated: _____, 2019

14  _____
                                         John Wilkinson, Member
15                                       Blazer Wilkinson LP

16  **Approved as to Form**:

17

18

19  Dated _____, 2019

20  _____
                                         Santos Gomez
21                                       Dawson Morton
                                         Law Offices of Santos Gomez
22                                       Attorneys for Plaintiff

23

24

25  Dated _1-15-20_, 2019
                      20

26

27                                       Ana Toledo
                                         Terrence O'Connor
28                                       Attorneys for Defendants
                                         Future Ag Management Inc.,

_____
Gomez-Gasca v. Future Ag Management, Inc. et al., Case No. 19-CV-02359-YGR
Class Action Settlement Agreement and Release of Claims

22

1

2   Dated: _____, 2019

3

4

Representative for Defendants
Future Ag Management, Inc.
and Future Harvesters
and Packers, Inc.

5

6   Dated: January 15, 2020

7

8

9

Kiana Amaral, Secretary
for Defendant
Camarillo Berry Farms, LP

10

11

12

13   Dated: January 15, 2020

14

15

John Wilkinson, Member
Blazer Wilkinson LP

16   **Approved as to Form**:

17

18

19   Dated Jan. 16, 2020

20

21

22

Santos Gomez
Dawson Morton
Law Offices of Santos Gomez
Attorneys for Plaintiff

23

24

25   Dated _____, 2019

26

27

28

Ana Toledo
Terrence O'Connor
Attorneys for Defendants
Future Ag Management Inc.,

Future Harvesters and Packers
Inc., and Elias Perez Chavez

Dated: _January 15_ , 2020

Michael C. Saqui
Jennifer M. Schermerhorn
Rebecca A. Hause-Schultz
Attorneys for Defendants
Camarillo Berry LP and
Blazer Wilkinson LP